After argument by Haywood and Baker for the plaintiff, and Harris for the defendant, the following opinion was delivered:
This verdict is complained of: I. Because the deed under which the plaintiff claims was permitted to be given to the jury as evidence of his title, although it was executed by two only of the executors, whereas four were appointed by the will of Bryan, and no *Page 194 
evidence was adduced of the renunciation of the other two. II. It is said that the charge of the Judge was incorrect, in instructing the jury that the first line of Bryan's patent should be continued to Walter Lane's instead of submitting it to them upon the evidence whether the line ought not to stop at the distance.
With respect to the first reason, I shall consider how far such evidence was improper, and whether it is sufficient cause to grant a new trial.
The general principle is, that a naked authority to executors to sell, being derived from the will alone, must be strictly pursued. The special confidence placed in them must be executed by the persons named, and by all of them; and whether they accept the administration or not, they have equal power to make a valid sale. Although it is admitted that nothing more than a naked power was created in the present (224) case, yet a distinction has been made, where the persons directed to sell are named specially, and when they are referred to as executors, or by a general description; and the cases cited establish this distinction so far as to authorize a sale by the survivors, where executors or sons-in-law have power to sell, some of whom die before the sale takes place. But it is doubtful whether the reason of these cases will authorize a sale by two of four executors when all are alive, and competent to join in the deed, when the sale takes place. The cases are thus noticed in Co. Litt., 112 b, 113 a. If a man devise lands to A. for term of life, and after his decease his land should be sold by his executors, and he make three or four executors, and during the life of A., one of the executors dies, and then he dies, the other two or three executors may sell, because the land could not be sold before, and the plural number of his executors remains. The impossibility of selling the land during the life of A. seems to be the reason why the other construction was restored to, in order to give a liberal interpretation to the will. So in the case of Lee v.Vincent, cited from Cro. Eliz., one of the sons-in-law died in the lifetime of the donee, and therefore the land could not be sold by all. In both these cases the objects of the devise must have been frustrated, had not the sale by the survivors been adjudged valid; in the case before the Court, such a consequence cannot follow, because the power of all the executors remains in full force.
If the authorities had stopped there, I should have hesitated to decide that the sale in the present case could be made by the two executors without the aid of the Statute of Hen. 8. But case of Bonifaut v.Greenfield, Cro. Eliz., 80, advances a step further, and, if it be law, goes the whole length of deciding the present case. It is a devise of land in fee to several executors to the intent that they should dispose of it, and it was adjudged that the sale made by three in the lifetime of *Page 195 
the fourth, he refusing to execute the authority, was valid. Upon the authority of this case, therefore, the deed in question might properly have been relied upon to support the plaintiff's title, if a refusal of the others, either to prove the will or join in the sale, had been (225) proved. For I do not conceive that a renunciation of record is required either by the reason of the thing or the practise and usage of this State. If there was any evidence of the fact before the jury, they were the proper judges of its weight; if there was none, then I apprehend it was improper to submit the deed to them as legal evidence of title; but,
II. Is this a sufficient reason to direct a new trial? A motion for a new trial is an application to the discretion of the Court, which they must endeavor to exercise in such a manner as will most effectually attain the justice of the case. If the merits have been fairly tried and the very right of the cause determined, a new trial ought not to be granted for the purpose of letting the losing party into an objection of a strict legal nature. And as laid down in Edmundson v. Michael, 2 Term Rep., 4, that if the Court sees that justice has been done between the parties, they will grant a new trial on the ground of a misdirection in point of law. The plaintiff is a purchaser for a valuable consideration from the executors, who sold in execution of the purpose of the will. The two persons who did not join in the sale have denied that they intermeddled with the estate. Such evidence upon another trial would be a ground for the jury to infer a refusal, and another verdict must place the parties, as to this objection, precisely in the condition they now are. This, however, cannot be a sufficient ground to set aside the verdict.
III. In giving my opinion upon this part of the case, I feel some difficulty arising from the imperfect knowledge I have of the testimony given at the former trial, and which I have been obliged to collect as well as I could from the observations of the counsel. Upon the abstract question of law, and deciding alone upon what appears in the grant under which the plaintiff claims, I should decide in his favor. The description of the land patented is, beginning at a pine and runs south 80 east 40 poles to a stake in the line of Walter Lane's patent, then along the line north 10 east 20 poles to his corner, then east 180 poles to White's line, then with his line, etc. (226)
Upon the face of the patent there is neither ambiguity nor repugnancy, but its primary intention manifestly was that Walter Lane's line should be the boundary; that should be the termination of the first line, and the course of the second; and when it is seen that Walter Lane's patent is issued in 1746, it is a reasonable conjecture that the *Page 196 
line was well established. But upon an actual survey it appears that although Walter Lane's line is in the course called for by Bryan's first line, yet that the distance of the latter gives out forty poles short of Lane's line. If the second line be drawn from the point where the distance of the first ends, it will never reach Lane's corner; and if the third line be drawn from the point where the second ends, it will proceed one hundred and eighty poles into the body of Lane's land, and, of course, never reach White's line, which is the third corner the patent calls for. Such are the consequences which follow from confining Bryan's first line to the forty poles called for in the patent; whereas, if it is extended forty poles further, to Lane's line, and thence to his corner, there was, when the grant issued, vacant land enough to satisfy it. It appears to me that a line called for, if it be in the course and can be shown to be the line of an old patent, designates more effectually than the plotted distance the land which was intended to be secured. If it were intended to be bound by the distance, why refer to the line of another tract? Why not mark a tree at the end of the distance, if it is really surveyed, or specify the distance only if it is plotted. In every case where the line of another tract is called for and no actual survey has taken place, I should apprehend that it was done, either because the surveyor believed that the distance would reach it, or, if he should be mistaken in fact, then that the line and not the distance should ascertain the land which he certifies. I say this in reference to lines well ascertained and in the course called for; and whenever the distance falls short, I think the presumption very strong that the mistake has happened there. But if in any case of this kind it can be shown that the land was (227) actually surveyed and located according to the distance, and such evidence is corroborated by marked lines and corners, it will then follow that the superfluous descriptions are false, and the patentee can consequently derive no benefit from them. I do not perceive that the case of Bradford v. Hill, 2 N.C. 22, is in opposition to this question. There Bryan's corner was four degrees to the east of north of the course called for in the deed to Bustin; notwithstanding which I suppose it was submitted to the jury to decide whether the old marked line from Pollock's to Bryan's corner was not the true one, since the case states that this line was taken by the jury to have been run by some person after the survey. It is true, the Court say, that in all cases where there are no natural boundaries called for, the dispute must be decided by course and distance, or by proving the line and corner. In that I concur, with this qualification, that the distance is not conclusive proof of the line and corner, where an old line is called for which is not variant from the course. Further than this, the present case does not call for an *Page 197 
opinion, though the cases of Branch v. Ward, of Eaton v. Person, and ofPerson v. Roundtree have gone much further in deviating from the words of the patent; for they all tend to establish this position, that the mistake of the surveyor or of the secretary who filled up the grant, shall not prejudice the patentee.
Rule discharged.
NOTE. — Upon the first point, see Marr v. Peay, 6 N.C. 84; Debowv. Hodge, 4 N.C. 36; Wood v. Sparks, 18 N.C. 389; Wasson v. King,19 N.C. 262.
Upon the second point, see Allen v. Jordan, 3 N.C. 132, and the cases referred to in the note on the second point in that case.
On the last point, see Smith v. Murphey, 3 N.C. 183, and the cases referred to in the note.
Cited: Cherry v. Slade, 7 N.C. 90; Wood v. Sparks, 18 N.C. 395; Dulav. McGhee, 34 N.C. 333; Brown v. House, 118 N.C. 886.
(228)